**BALTIMORE AND OHIO RAILROAD COMPANY, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMIS-SION, Respondent,**

American Federation of Labor-Congress of Industrial Organizations et al., Intervenors.

**SEABOARD COAST LINE RAILROAD COMPANY**

and

Winston-Salem Southbound Railway Company, Petitioners,

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and William J. Usery, Jr., Secretary of Labor, Respondents,**

American Federation of Labor-Congress of Industrial Organizations

and

United Transportation Union, Intervenors.

Nos. 75–2163, 75–2244.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 24, 1976.

Decided Dec. 30, 1976.

P. Michael Giftos, Baltimore, Md., for petitioner in No. 75–2163.

Malcolm R. MacLean, with whom Charles A. Edwards, Atlanta, Ga., was on the brief, for petitioners in No. 75–2244.

Marc R. Hillson, Atty., U. S. Dept. of Labor, Washington, D. C., with whom Michael H. Levin, Counsel for Appellate Litigation and Allen H. Feldman, Asst. Counsel for Appellate Litigation, U. S. Dept. of Labor, Washington, D. C., were on brief for respondent.

Lawrence M. Mann, Washington, D. C., for intervenor.

Before McGOWAN and TAMM, Circuit Judges, and GERHARD A. GESELL[*], United States District Judge for the United States District Court for the District of Columbia.

PER CURIAM:

These two cases, which were placed together on the argument calendar, involve the same issue. That issue is whether Section 4(b)(1) of the Occupational Safety and Health Act of 1970, 84 Stat. 1590, 29 U.S.C. § 651, *et seq.*, (OSHA) exempts the railroad industry from regulation thereunder. Section 4(b)(1) provides:

> "Nothing in this [Act] shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health."

Petitioners assert two theories of exemption derived from this language. One is that by its own force the section exempts any industry subject to regulation by another agency; this is achieved by an ultimate equation of the statutory phrase "working conditions of employees" with the word "industries." The second theory focuses upon the word "exercise"; it assumes that this statutory condition has been met by any assertion of regulatory authority, no matter how limited, or indeed by any proposed, as distinct from an actually effective, exercise of such authority.

These precise contentions have hitherto been passed upon, and rejected, by two other circuits. *Southern Ry. Co. v. Occupational Safety and Health Review Commission,* 539 F.2d 335 (4th Cir. 1976), *cert. denied,* 1976, —— U.S. ——, 97 S.Ct. 525, 50 L.Ed.2d 609; *Southern Pacific Transportation Company v. Usery,* 539 F.2d 386 (5th Cir. 1976). Finding ourselves in essential agreement with those decisions in circum-

[*] Sitting by designation pursuant to Title 28 U.S. Code Section 292(a).

stances parallel with the cases before us, we deny the petitions for review.[1]

■ With respect to the first theory pressed upon us by petitioners, we note, as did Judge Gee, writing for the Fifth Circuit, that it rests mainly on a comparison between 4(b)(1) and another section of the Act, 24(a). Since the latter exempts "employments excluded by [Section 4]" from OSHA's statistical provisions, it is argued that the word "employments" means the same as "industries." Thus, by equating "employments" with "working conditions," the latter, as used in 4(b)(1), is, in petitioners' submission, to be taken without more to have accomplished an industry-wide exemption for any industry subject to regulation under other statutes than OSHA. We agree with Judge Gee's characterization of the effect of this argument as being "first to magnify a minimal ambiguity and then to resolve it by reference to a more ambiguous provision . . . ."

■ It is clear that Congress attached great importance to the safety and health protections of employees afforded by OSHA and, in particular, to the desirability of bringing those protections to bear upon employees generally as fast as possible. The legislative scheme, in furtherance of this objective, was to apply OSHA forthwith across the board, but to provide that regulation might be preempted by other agencies with comparable authority over particular industries. This is too plainly apparent to warrant its frustration by as tortured a meaning as petitioners purport to draw from the face of 4(b)(1) alone.

■ For essentially the same reason, we, in common with the Fourth and Fifth Circuits, are unpersuaded by petitioners' second theory. The Congressional purpose just adverted to would surely be similarly set at naught by a construction of the word "exercise" to the effect that the actual imposition of regulatory controls in one or two respects by an agency possessed of broad authority over railroads forecloses OSHA regulation in all other respects, or that the mere initiation of proposed rulemaking fences off the subjects of that proposal from OSHA. As the discussion of legislative history by our sister circuits makes clear, there is really nothing of substance in that history to justify our attributing any such an intention to Congress.

Petitioners point to the fact that the Federal Railroad Administration on March 7, 1975 issued an Advance Notice of Proposed Rulemaking; and that, after reviewing the comments received in response thereto, concluded to move towards a comprehensive code of safety and health standards. The first of what is assertedly intended to be a series of steps to achieve this goal was taken by means of a Notice of Proposed Rulemaking issued July 15, 1976, covering General Provisions, Means of Egress, General Environmental Control, and Fire Protection. It is argued that the articulation of this purpose by FRA, and its seriousness as evidenced by this initial rulemaking proceeding, are enough to constitute an "exercise" within 4(b)(1) precluding further regulatory action under OSHA.

The Advance Notice of March 7, 1975 was pressed upon the Fourth and Fifth Circuits to the same effect, but without success.[2]

---

1. In No. 75–2163 the Baltimore and Ohio Railroad Company complains of a finding that it has committed a number of violations of OSHA based upon an inspection in 1974 of a locomotive maintenance facility in Cincinnati. In No. 75–2244, the petitioners are Seaboard Coast Line Railroad Company and Winston-Salem Southbound Railway Company complaining of violations based on inspections of office and yard facilities also occurring in 1974. In the three consolidated cases decided by the Fifth Circuit, the inspections in question took place in 1972 and 1973, which latter year was the date of the inspections involved in the Fourth

Circuit decision. In all of these instances, the OSHA regulations found to have been violated were fully in effect, and no FRA regulations of the same subject matter were either in being or proposed.

2. The Fourth Circuit disposed of this contention as follows (at 339–40 of 539 F.2d):

Aside from the question of whether such an advance notice constitutes rule making under the Administrative Procedure Act, 5 U.S.C. § 551(5), it appears to us that the areas of the railway industry to be covered by the proposed rules will be confined to those which

We think the progression by FRA to the publication of an initial Notice of Proposed Rulemaking on July 15, 1976 is similarly lacking in force to terminate OSHA applicability. Preemption may, of course, eventually occur as to those areas covered by any regulations promulgated as a result of the proceeding, but we see no Congressional purpose in 4(b)(1) to treat a proposal to act as action itself.[3]

If the Federal Railroad Administration wishes, in the fullest reach of its statutory authority, to assume the dominant role in determining the health and safety aspects of the working conditions of railroad employees, Congress has opened for it an avenue to that end. But Congress did not contemplate that there would be no regulation whatever while the FRA is still considering what road to take, nor does a single step down that road carry preemption further than that step itself.

It is unquestionably true that, as petitioners understandably lament, the Congressional scheme fixed upon in this instance is visibly pregnant with dangers of duplication and overlapping assertions of authority by competing federal agencies. An industry caught in the middle by this approach has, at the least, every right to expect that, until the final boundaries are defined, there will be sensible cooperation and mutual adjustment between the various agencies involved.

The petitions in Nos. 75–2163 and 75–2244 are

*Denied.*

are the subject of regulations presently in effect. . . .

. . . . . .

We agree with the Secretary that the denial of OSHA's protection to numerous workers upon the basis of this speculative announcement would be inappropriate. (Footnotes omitted).

The Fifth Circuit's views were the same (at 392–93 of 539 F.2d):

We agree with the Fourth Circuit's view in *Southern Ry.,* . . . that this speculative announcement adds nothing to previous FRA activity and is not a sufficiently concrete "exercise" to preempt the otherwise applicable regulations. Section 4(b)(1) requires an actual "exercise" of "authority to prescribe or enforce standards or regulations," and this bare announcement that the FRA is considering promulgation of regulations does not suffice, either alone or in combination with previous activity. The railroads rely on the remarks of the House bill's sponsor that preemption would occur when other agencies were in "the formative stages of regulations or enforcement." 116 Cong.Rec. 38,373 (Nov. 23, 1970) (remarks of Cong. Steiger), reproduced in *Leg. Hist., supra* n.5, at 997. These remarks, whatever they indicate about the intent of the whole Congress, do not convince us that Congress meant for section 4(b)(1) to be activated in the present circumstances by mere announcements of possible regulatory action. Congress obviously wanted railroad health and safety conditions to be regulated forthwith by *some* agency since it took the unusual step of requiring an actual exercise of authority to forestall OSHA coverage. It seems unlikely that this same Congress could have meant for *existing and operative OSHA regulations* to be displaced without more conclusive FRA action than a mere statement of intent to do something in the future. (Emphasis in original) (footnotes omitted).

3. No more than does the Fifth Circuit, *see* note 13, page 393 of 539 F.2d, do we intimate any opinion on the questions, not presented by these appeals, of whether (1) an OSHA regulation becoming effective for the first time after an FRA notice of proposed rulemaking on the same subject would apply to the railroad industry, and (2) a considered decision by FRA after rulemaking that a particular aspect of the railroad industry should not be regulated at all would preempt or preclude OSHA regulation of that same aspect.